Hear you, hear you. This honorable appellate court for the Second District is now open. The Honorable Justice Robert D. McLaren presiding along with Justice N. B. Jorgensen and Justice George Burgess to 19 0862 people of the state of Illinois. Plaintiff appellee versus John J. Mickey, defendant appellant arguing for the appellant Kevin A. Halverson arguing for the appellee Amy M. Watroba. Mr. Halverson, you may proceed. Thank you, Your Honor. May it please the court counsel. My name is Kevin Halverson and I represent the appellant John Mickey. The facts presented by the state in this case were insufficient for the trial court to find the defendant John Mickey guilty beyond a reasonable doubt of the offense of aggravated criminal sexual abuse while in a position of trust, authority or supervision. That is the sole issue before this court. Whether Mr Mickey was in a position of trust, authority or supervision at the time that the sexual conduct occurred, the rule of law is clear, as stated in the Second District case of people versus Kaminsky, cited by both parties. A defendant must hold the position of trust, authority or supervision at the time of the offense. Nothing in the case law presented by the state suggests otherwise. When viewing the could have found Mr Mickey guilty beyond a reasonable doubt of aggravated criminal sexual abuse. He was not in a position of trust, authority or supervision in late March of 2018 when the kissing and touching occurred at his residence. Mr Mickey was not a B's coach or employer. Mr Mickey was a B's coach leading up to and including January and February of 2018 off and on. It is clear that the club season for soccer that Mr Mickey coach had ended sometime in February of 2018 Illinois State High School Association rules that a B indicated at trial she was aware of prevented Mr Mickey from being her coach while she was in interscholastic soccer and she was in interscholastic soccer in mid February. Around the same time, she further testified that any sexual contact that she had with Mr Mickey was after he was no longer coaching her. He was clearly no longer her coach in the last week of March of 2018 and no case law submitted by the state provides for the theory that a former coach remains in a position of trust, authority or supervision for the balance of his or her life. At one time, Mr Mickey was also a B's employer. A B was employed at Mr Mickey's accounting firm in the summer of 2017. At that time, she filled out time cards and received four paychecks. In the spring of 2018, while she may have stopped at his office on one or two occasion, the state presented absolutely no credible evidence support that supports the argument that a B worked for Mr Mickey in the last week of 2018. A B stated in her testimony that she worked for Mr Mickey in February and through March or April of 2018 and that she worked a couple nights a week from 5 p.m. to 7 or 8 p.m. Yet there were no time sheets filled out or presented like there were in 2017. There were no paychecks for 2018 like 2017 and a B stated that she doesn't know why she wasn't paid. Well, that's easy. She wasn't paid because she wasn't working. It's just another fabrication that came from her testimony. There was no corroborating documentation or testimony from anyone at the accounting firm that they even saw her working there at all in 2018. And you can be sure that there were plenty of employees working with late hours during the tax season of March of 2018 at an accounting firm. The office manager, Michelle Tams, did testify and she stated that she knew a B. She saw a B working there in 2017 and saw her there in January and mid-February but doesn't know if she was working. She never saw her there in March of 2018. Michelle Tams never saw a B there after mid-February and Tams worked every night until 6 or 7 p.m. because it was tax season. If a B was working at the accounting firm during tax season, somebody would have testified that they knew knew she was there or even saw her working there. There was not even any corroborating testimony from a B's parents that she was working. A B initially told investigators in this case that she went to client meetings with Mr. Mickey but then admitted that going to client meetings was a lie. A lie that she told her parents when she went to Mr. Mickey's home. There was no testimony from the parents that they were placing a B in Mr. Mickey's trust or care in March of 2018 and no case law submitted by the state provides for the of trust authority or supervision for the balance of his or her life. The trial court in this instance also had to consider the credibility of the witness and was in the best position to judge the credibility of the witnesses. A B had no credibility as she was consistently impeached throughout the trial with prior statements that were not only inconsistent with her testimony at trial but also inconsistent with each other. A B story grew as she was telling ever changing stories throughout the investigation and up through the trial. It went from initially kissing then to touching then everything happened at Mr. Mickey's office then everything happened at his home then there was penetration and then there was ejaculation which she added two days before trial. All during which time she had hired a civil attorney so that she could sue Mr. Mickey and his business. A B's lack of credibility taints everything that she says. The trial court considered this and remember A B's credibility was touched on and talked about in determining the motion for directed findings on counts one through four. As the trial judge pointed out, there weren't just minor inconsistencies in her testimony when the trial judge directed out the criminal sexual assault charges. There were major inconsistencies. She is not to be believed. Mr. Mickey was also interviewed by investigators. He went to their office voluntarily. He told the investigators that at one time he did coach A B, that he had hired A B to do some work at his accounting firm in 2017, that he did attend the church where A B's father was a pastor and stated that he felt he violated their trust. He told them that he had contact with A B at his home during spring break at the end of March 2018. A B had came to his house during that week first on a Monday. It was during lunch hour, nothing to do with work or the office. They had lunch, watched a movie, started kissing and disrobed. He never completely disrobed leaving his boxers on. They kissed, he touched her breasts with his hands and this occurred on two occasions that week. There was no sexual, there was no sexual penetration. There was sexual conduct. He never told them that he was presently coaching her and he never told them that she was presently working for him that at that time. When looking at trust, your honors, you can violate someone's trust without being in a position of trust, authority or supervision. As an example, I could trust you to let my dog out at noon so I don't have to go home and do it and then you don't. You may have violated my trust, but that however does not put you in a position of trust over me. I may trust your opinion on something, but that doesn't put place you in that position of trust. The prime example of being in a position of trust, authority or supervision involves a babysitter or schools and school teachers. The parents placed their trust in that person who is responsible then for the care and supervision of their children. Mr. Mickey was not responsible for A.B. when she lied to them about going to client meetings and went to his home to see him on a personal level. And really, we don't know what level of trust, if any, they have may have, the parents may have placed in him at that time in March of 2018. The parents did not testify. Your honors, the case law is clear. Mr. Mickey had to be in the position of trust, authority or supervision at the time of the sexual conduct. By the end of March 2018, he was no longer her coach, no longer her employer. He went to church where A.B.'s father was a pastor. They were not close family friends. He wasn't her babysitter. Being in a congregation is not enough. Being a former coach or a former employer is not enough. Being a friend is not enough. They were not close family friends, like stated in People v. Secor, cited by both parties. Just because you may trust someone, it doesn't always automatically equate to placing them in a position of trust, authority or supervision over someone at a particular time. Mr. Mickey was not in a position of trust, authority or supervision when A.B. lied to her parents about going to client meetings so that she could go over to Mr. Mickey's home just during the last week of March of 2018 because she wanted to see him. There was no testimony from A.B.'s parents that they placed their trust in Mr. Mickey to take care of or supervise their daughter when she told them that she was working. He was exercising no authority over A.B. and he was not supervising her. Their relationship had changed after he was no longer her coach or employer. The evidence presented in the trial court was so improbable or unsatisfactory that it creates reasonable doubt of Mr. Mickey's guilt. Thank you. Thank you. Justice Bridges, do you have any questions? I do, thank you. Mr. Halverson, good morning. Good morning. My question is, you agree that some sort of trust developed between the defendant and A.B. to establish their relationship, correct? Yes, I would agree with that. And that this trust that was established was in fact recognized by the parents and being able to coach her for that period of time in 2017, is that correct? Well, technically we don't know that because the parents didn't testify, but that could be an assumption that someone could make. Okay. All right. And once a position of trust or supervision or authority is established with a 17-year-old, when does it end? It can end at any time. I mean, that's based on the facts. In other words, if I say tomorrow's your last day, you're saying that it ends right then. If she works for him and tomorrow's your last day, good luck. That trust and supervision and authority ends on that day. Yes. I am no longer beholden or in any way answering to that person as an employer. They're no longer in that position of trust, supervision, or authority over me. But once it's established, doesn't it always exist? I don't think it does. It doesn't exist in perpetuity and go on forever. If I was a coach of somebody when they were six years old, that doesn't mean that I'm still in a position of trust, authority, or 17. It has to be based on the facts at that time. At the time that the conduct occurred is what the case law says and it is what I'm relying on and what I believe. Okay. And so you agree that the defendant was a soccer coach, her boss at his accounting firm. Also, he was her mentor and involved in church, correct? Yes. He was in their church. He was involved as her coach and as her employer. I don't know that she explicitly stated that he was her mentor in any way. And in March of 2018, the defendant continued to be involved in A-B soccer training. He provided her with workout advice. Isn't that correct? She asked him questions about workouts that he could be doing and he provided her advice, correct? He did. He advised her on some workouts that he could do. But again, just because I asked somebody's opinion on something or asked somebody for their advice doesn't mean that they're in a position of trust over me. That's still not coaching? It's not a child vulnerable to being groomed and once it's established, it leads to the betrayal as identified in the Robinson case. And isn't this why the legislators sought to protect such children from this offense? The legislature sought to protect them from this type of offense at a time that the person is in that position. However, there isn't any evidence presented to the court regarding grooming and it wasn't presented to the trial court. If the state felt that there was evidence of grooming going on, the state surely would have charged that offense. But there isn't evidence of grooming that was presented here. I mean, grooming in the sense, and maybe that's the wrong word, because there is no evidence of grooming. But what I was referring to is, isn't this trust that we've talked about that existed in 2017 that was developed over the past years, the coaching still present in March of 2018? I don't believe it was. There was no testimony from the parents that that trust existed or that they were even placing in his care at any time. All right, and Mr. Halverson, you said in your opening remarks that there was no credible evidence that AB worked for the defendant in 2018. You said no documentation of this. But in fact, when you look at the record on 173 where the defendant in a text thanks AB for working on a day in March of 2018 and where AB responds, thank you for letting me work, that she was in fact still employed by defendant. Wasn't he still her boss? No, I don't think so. That's all part of the ruse that she was engaging in with her parents. He was telling her parents that she was going to work for him, but she wasn't because she wanted to see him. That was something she was telling her parents and that text message is just to support that. And that was the, so this was designed by both of them because he responded back to her text. He thanked her and she basically, you're welcome. So you're saying he was part of this ruse as well? He may have been, we don't know. She didn't indicate that. She just indicated that she did tell her parents he was going to client meetings with him and that she admitted that that was a lie so that she could spend time with him. He didn't say who, when, or where, how, or how that idea came up. Mr. Halverson, the text was thank you for working today. Yes. And her, and so the question that I have is, you're saying that this was a ruse for the parent. So was he involved in that? He may have been, we don't know. There's no direct testimony of that. Thank you, Mr. Halverson. I have no further questions. Thank you, Justice McClain. Thank you, Justice. Justice Jorgensen. Do you have any questions? I would say, yes. I would believe that it could be both. I mean, we have to look at it objectively here, but it may be subjective on the person and then that person's testimony as to what their level of trust in somebody was. And here, didn't AB testify fairly extensively that she looked up to the defendant? He was like a second dad. She trusted him. I can't, I don't have the transcript in me, but basically words to that effect. Yes, she did. Okay. And so if she held his trust, how do we decide when that trust ended? In other words, and that was probably an unfair question, but here's my point. When we say position of trust, the coaching, the employing, the making her the team captain, all of those things put him in a position that created this trust. But would you agree that trust is a feeling, it is a perception that isn't ended with a bright line? I would agree with that. And my point here is that there's really no testimony that that was still existing in March of 2018 after their relationship had changed and she decided to lie to her parents to go to his home. So that all of her testimony, we would look at that and say that all meant then, not now or not in, I'm sorry, not in March of 2018. Yes. As the case law, the way I interpret it says that it has to be at the time of the sexual conduct. And the whole argument here on behalf of the appellant is that he wasn't in that position at that time. I appreciate that. But if we were to take the position that trust is a subjective determination, would we view it then from AV's perspective? You could. And then also looking at also her credibility and just the objective perspective as well and what anyone else may have said about it. AV said that she did trust him. She did look to them as a mentor because he was her coach and because he was her employer. But that was all stated, I believe, in the past tense. And so was he in that position then in March of 2018? I don't believe so. Should we view position of trust on a case by case basis? Yes. What factors should we consider in determining when and when trust existed and or when it ended? What should we be looking for? Well, the facts of the case itself, like in this one, the fact that at one time prior to their relationship changing, he did, in fact, coach her. He did, in fact, supervise her at work. And it's at the time and none of that was occurring at the time that the relationship had changed and the trust was there. So again, you're coming back to, and I appreciate your position, that when the coaching stops, when the employment stops, and assuming for the sake of argument here, or the point of my question, that all ended before the beginning of March. Then because the position that evaporates? I believe it can, yes. It's a case by case, like you had indicated. But then here, should we consider the closeness of the positions? In other words, he was not a coach for a couple years. He was her coach like forever. He made her the captain. He had daily contact with her, at least during soccer season, that he took her on as an intern, which he'd never done for any other student. So should we consider all of those factors? There to be taken? I'm sorry, for example, the length of time that he held those positions? Yes, those are all considerations that I believe the court should take into consideration. But again, all of that changed after she was no longer working for him, no longer was being coached by him. There, the nature of everything changed. I mean, they were friends, right? And friends, friends can be friends without being in a position of trust, supervision or authority over each other. All right. So again, just so I'm clear here, your position is the coaching ends when the employment ends, the trust ends? Yes. Okay. All right. I have nothing else. Okay, thank you. I believe what has been established through questions is that each of these cases involving trust are sui generis, and that each one should be decided on their own facts. Would you agree with that? Yes. And that the burden of proof insofar as establishing prejudicial error, you have to establish that no rational trier of fact would find your client's statement that he breached his trust, or maybe you can reiterate what he literally said, and then explain how a rational trier of fact would not take that into consideration, give it a substantial amount of weight, based upon what it says in admission against interest. Yes, it could be the trust that they had in him when he coached her, or when she worked for him, but he was no longer coaching her, or she was no longer working for him at that time. We don't know specifically what trust was being referred to, or what AB's parents may have placed in him. They never testified, and it wasn't asked of Mr. Mickey as to what specifically he meant by it. I have no other questions. Any other questions by the panel? Thank you, I have no further questions. Thank you. Sir, you'll have an opportunity to make rebuttal. Thank you. Ms. Wetroba, is that how you pronounce your name? Yes, your honor. You may begin. Thank you, your honor. I'm Amy Wetroba. I'm an assistant state's attorney with DuPage County on behalf of the people. May it please the court, this court should affirm the defendant's convictions for two counts of aggravated criminal sexual abuse. The trial court expressly rejected the same arguments raised by defendant in this appeal, that he was not in a position of trust, authority, or supervision in relation to the victim, AB, at the time the sexual conduct occurred. And under the Collins standard, this court should make the same finding and affirm the judgment below. When this court, just as the trial court did below, examines the totality of circumstances, it will find that it shows that the trust developed by the defendant with the victim over the course of approximately seven years, beginning when she was approximately 11 or 12 years old, did not dissipate from January to May of 2018, which was her senior year in high school, simply because the defendant was no longer officially her soccer coach and may or may not have still been his employer. By defendant's logic, there would be no trust relationship between the defendant and the victim or her freshman year of high school, simply by virtue of the fact that she was participating in interscholastic soccer versus travel soccer during those months. It's very clear from this record that the relationship of trust that was built by the defendant with the victim over the course of seven years continued after the travel season of her senior year and that the defendant exploited it. The trial court aptly noted that athletes coached by someone, especially in the case of extensive coaching over a number of years, developed trust both on and off the field. And under the facts of this case, as your I do believe this is a sui generis type of examination. The fact that the defendant employed this victim at his accounting firm for a period of time and admit that she was the only soccer player that he ever coached, that he ever employed at his firm. So we have that additional fact. We also have the family friendship that developed in part by I would note, of course, the statute is phrased in the disjunctive, which it's trust authority or supervision and meant much of defendants arguments in the cases cited in defendant's brief focus on positions of supervision, specifically such as babysitting or authority such as employer. This And As the C CORE court noted the legislature in crafting this statute and making carving out this element of this offense for aggravated criminal sexual abuse. Note it sought to prevent sexual offenses by people that children would tend to obey and then whom a child would place their trust defendant certainly meets this definition and the trial court properly determined that the state had met its burden of meeting that element in this case. And I would point out as we did in our brief that the trial court made extensive findings. At the time of motion for a good finding reiterated those findings at the close of evidence in the finding of guilt and then also rejected the same arguments when raised in the motion for new trial. In so far as defendant claims that the state's position suggests that once in a position of trust is established that it continues for the balance of the defendant's life. I disagree. Again, the statute is worded in the disjunctive And while positions relationships that are built or examined in other cases that were solely based on, let's say, supervision or authority may have A more definitive end date as defendant suggested. However, under the facts of this particular case where we have supervision authority and trust going on at the same time. And then we have a continued communication and relationship between the defendant and the victim via text messaging. Text messages that make it clear as this court has pointed out that the defendant said thank you for working today and the victim responded. Thank you for letting me work. The fact that the defendant admitted in his interview at the CAC on April 9 that he had kissed the victim a few weeks, just a few weeks prior in the parking lot of his office. There, therefore, establishing that the victim was coming to his office, make it clear that this in this particular case under these facts, the relationship of trust continued the defense is very critical of the victim's credibility in this case. In this appeal, and I would just remind the court of what it's that it's well established that the trial court is free to accept or reject as much or as little of the witnesses testimony in a particular case. And it's clear that the trial court did this in this case. Under the Collins standard This court should affirm the findings of, excuse me, affirm the judgment of the court below could affirm defendants conviction for the reasons I've stated here and in our brief. And with that, I would invite any questions from the court. Thank you, Justice Bridges. Do you have any questions. I do. Thank you, Miss with troba and I hope I'm pronouncing your name correctly. Would you explain to this court what non sexual elements of a beads and and defendants relationship in the March of That amounts to trust authority or supervision when the sexual abuse happen. Well, I think it's clear from the record that they continue to remain in contact via me in person meeting via text messages, some of which related to her continued training. As a soccer player for her interscholastic season that was taking place at the time, as well as her future aspirations to play in soccer. The there were additional text messages, as I pointed out, related to work. There were I don't know. These would probably fall in the I don't know if I would consider the sexual or not, but they there are many text messages that are outlined in the record and that are in in the Some of which we outlined in our brief and then all that are in the record that allude to things like so glad we waited happiest person in the world. I think there's a clear sexual connotation to that, but I think it also is Is showing the pattern of behavior and the continued relationship and interaction between the defendant and the victim. Assume we accept defendants position that the position of trust that was once hell for a be ended sometime in 2017 or at least before The acts here does the statute that we're dealing with here that's before us no longer apply at the onset of the sexual relationship in if it does, why I'm not sure I understand the question if I do agree with the defense, but there has to be under the sketch or under the case law that there has to be that position of trust authority or supervision in relation to the victim at the time of the sexual conduct. So if you're saying that What I'm asking. I'm sorry. Let me clarify what I'm asking is, is that what is in the record here that you would say shows that the position of trust and authority continue to exist at the onset of the sexual action activity in this case. I would say the continued dialogue, the community, the communications between a 17 year old and a 49 year old via texting and FaceTiming both All the sexual nature in the sharing of pictures of the sharing of live video of the discussion of the victim's body specifically her abdomen. I would say that, you know, the personal questions about the trusting him to guide her on her training. That would be an example. The evidence showing that she would sit with the defendant and his family at church during that time period. The fact that she would go to his house. And March 24 the week of spring break March 24 and 31 when no one else was home certainly events is a trust between the two of them. Those would be some examples from the record. I think, in addition to, as I said, the trial court lays out extensively at the time of the motion for directed finding Other things of record that demonstrated their continued trust. Thank you. Council and thank you, Justin. I have no further questions. Thank you. Justice Jorgensen. Do you have any questions. You You indicated that the relationship of trust continue Yes. How is a relationship of trust, the same as a defendant in a position of trust. I think that I think that the way the statute is worded. He holds a position of trust in relation to the victim. So let's if we were to just, let's say, for the sake of argument, take out the other to a disjunctive the the authority or supervision. Which, as I know, I know that our brief. We don't concede that we do we do maintain that there was some element of authority and supervision, but if for the sake of argument, we were to take that out and just read Hold the position of trust in relation to the victim. I would say that largely what what your honor was discussing with opposing counsel that you when you look at the at the facts of the case and you look at the history, the long standing history of Of the position that the defendant held in the victim's life, which was that of long standing coach long standing family friend. You know, not as long standing, but an employer that that he still make nothing change nothing about that position with respect to their relationship changed just by virtue of perhaps the the title of Current coach disappearing. He's still maintains that position so You're The point is, he stops employing her he stops coaching her. Isn't that the purpose of this statute. Someone that I knew who used to be my coach. There's still the age difference, blah, blah, blah, but he's no longer in any position with relationship to me or the victim. I think I disagree. I think that the that again when you're looking at, I think that it would someone who coached, let's say a child for one season when that child was 11 And then didn't have any contact with that person. For several years and then encountered that that child, a little bit later, let's say when she was in high school, we would have a completely different situation, but by virtue of his position in her life. As which is informed by the fact that he did service her coach and service her boss. But even by by virtue of his position in his relation to her family, the position of of being in her life as a trusted family friend. Hold on a second. Hold on. It's a position of trust between the defendant and a V, not a position of trust between the defendant and her family. Correct. So that all this About her family is really irrelevant. Um, it's, I don't think I think it's I think it's circumstantial, I think, and by the nature of the evidence that came out and the defendant statement with respect to he violated the trust of her family. I but I don't think it's completely irrelevant. I think that I agree with you that it is the it is the nature of the relationship between the defendant and the victim. That is an issue under the statute. I think that Um, If In other words, here's what I'm driving at the statute was designed to to elevate the protection of a child at the time when they are under the supervision authority or position of trust to someone who would become a perpetrator. But once that will be perpetrator is no longer supervising you have authority over you, you are in a position of trust. That's the end of the statutes aggravating factor. Um, I Know if the legislature. But, but I would Wanted this to continue. They certainly could have said that, but they make it made. I think at the time of the offense. I agree with you, but I disagree with you. But under the facts of this case, I was, I just, I agree with you. Obviously, with the legislative language, but I would submit that under the facts of this case as the trial court found And it was a reasonable finding that the defendant still maintained a position of trust within the legislature's intent. Again, drawing from the language of I believe it's And looking at the cases where, for example, I am the case name is escaping that might be Grassley where the, the, the offender. The defendant was a coach and a school district and did not and and the victim was a student in that school district, even though there was no direct she did. She was, I think, a cheerleader and he was a boys track coach or something like that, but he was in a position That would be that would cause children to trust him and this defendant by virtue, even by virtue of, again, looking at the totality of their relationship. And the fact that he was still coaching her and giving her and giving her advice and there's evidence that he was also still employing her, albeit off the books at his firm and having her come to the office. It was still in a position of trust with this victim. Okay. All right. That was really the gist of my questions. Thank you. Thank you. I have no other questions. Justice Bridges. Do you have any questions in response to Justice Jorgensen's questions. I do not. Thank you. Okay, thank you very much. Thank you, sir. Yes, Mr. Halvorson. I believe that's correct. You may proceed. Thank you, Judge. The Mr Mickey may have even trusted a be enough to make her a coach or a captain, but that doesn't establish him as a position of trust authority or supervision. After all of that ends. He was not in a position of trust authority or supervision at the time in March of When she came over to his home. There's no testimony that he told her to come over that he forced her to come over that he said she had to come over That she had to kiss him. There was no testimony that it was his idea that they kiss that it was his idea that they this world. This was all mutual between the two of them. He was not in a position of trust authority or supervision in the end of March. When the sexual conduct occurred and the trial court aired in finding him guilty. Thank you. I have no other comments. Thank you, Justice bridges. Do you have any questions. I do not. Thank you. Okay, Justice Jorgensen. Do you have any questions. My, my final question is that you are listening to your, your rebuttal argument there you are discounting any continuing quote coaching training. Mentoring for physical strength for her continued soccer. Correct. Yes, just because she asked him, is there any training. I could do to help me with this doesn't place him in a position of trust authority or supervision. I could Google what additional exercises. Should I do for soccer or to participate in a particular type of event and the answers that I get. Don't put the person who gave those answers in a position of trust authority or supervision over me or even make them my coach. Does it Tend to establish that she perceived him again the subjective view as basically continuing to give her coaching or if not using that word athletic mentoring. He may have been giving her advice, but that doesn't make him a coach. Okay, fair enough. Fair enough. Thanks. Thank you, Your Honor. Thank you. I have no further questions. Justice bridges. Do you have any questions based upon Justice Jorgensen's questions. I do not. Okay, thank you. The case will be taken under advisement and a disposition will be rendered in app time. Mr. Clerk, you may close out the proceedings and terminate the recording. Thank you.